IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BILLIE JEAN DAVIDSON, | Case No. 3:17-cv-00688-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**BECKERMAN, Magistrate Judge.**

Billie Jean Davidson ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The sole issue presented on appeal is whether the Administrative Law Judge ("ALJ") erred in concluding, at step three of the sequential process, that Plaintiff did not meet Listing 12.05C, the listing for intellectual disability. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and remands for an award of benefits.

PAGE 1 – OPINION AND ORDER

**BACKGROUND**

Plaintiff was born in December 1971, making her forty-one years old on March 27, 2013, the day she filed her protective application.[1] (Tr. 21, 59, 73.) Plaintiff has a ninth grade education and past relevant work as a companion/housecleaner assistant. (Tr. 21, 173.) In her application, Plaintiff alleged disability due to back and neck issues, attention deficit disorder, depression, anxiety, posttraumatic stress disorder ("PTSD"), chronic pain, and a learning disability. (Tr. 59, 73, 172.)

On March 1, 2013, Plaintiff was referred to Margaret Mahlik ("Mahlik"), a licensed clinical social worker, for a mental health assessment. Plaintiff reported that she dropped out of high school "due to being a teen mom at age [sixteen]," she has not received her General Equivalency Diploma ("GED"), she has three children, including two with "special needs," she was in special education "all through school," she has "friends and [a] church group," she is a rape victim, and she feels "conflicted and depressed, including sad, due to [her] son being convicted of a rape." (Tr. 249-50.) Mahlik's primary diagnoses were major depressive disorder and PTSD, and she assigned Plaintiff a Global Assessment of Functioning score of sixty.[2]

On March 8, 2013, Plaintiff established care at Western Psychological and Counseling Services. Dr. Joni Moon's ("Dr. Moon") initial diagnoses were PTSD and "major depressive disorder, single episode, moderate," and she assigned Plaintiff a current GAF score of fifty-five.

---

[1] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 12-771–AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

[2] A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) (citation omitted). "A GAF score of fifty-one to sixty 'indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Collins v. Comm'r Soc. Sec.*, 357 F. App'x 663, 665 n.2 (6th Cir. 2009) (citation omitted).

PAGE 2 – OPINION AND ORDER

(Tr. 335.) Dr. Moon also noted that Plaintiff reported that she lives with her boyfriend of sixteen years, her twenty-four-year-old son, and her sixty-five-year-old "roommate whom she takes care of." (Tr. 336; *see also* Tr. 275, noting that Plaintiff appeared for an examination and reported that she has "boarded" a sixty-seven-year-old "mentally disabled man for many years who is on SSI himself," Tr. 47, indicating that Plaintiff has "known [the man] for years and he has no family," so Plaintiff reminds him to bathe, to wear clean clothes, and to put his laundry in the washing machine).

On August 2, 2013, Plaintiff was referred to Dr. Ronald Duvall ("Dr. Duvall") for a psychological examination. (Tr. 273-77.) Based on his clinical interview, review of "[s]cant medical and mental health records," and mental status examination, Dr. Duvall's primary diagnoses were PTSD that was chronic and mild to moderate, and nicotine dependence. (Tr. 273, 276.) Dr. Duvall ruled out diagnoses of attention deficit hyperactivity disorder ("ADHD"), a caffeine-related disorder that was not otherwise specified, and a borderline intellectual quotient ("IQ"). Dr. Duvall observed that Plaintiff's "brief" mental status examination "suggested problems in concentration, working memory, arithmetic ability, delayed auditory memory, commonsense judgment, and fund of information," that Plaintiff "did not qualify" for a diagnosis of a depressive disorder, that the "daily effects" of Plaintiff's PTSD/anxiety "would be unlikely to represent a significant barrier to her working," that Plaintiff's ability to "cope with stress and anxiety is likely to improve with cessation of both smoking [two packs per day] and cessation of caffeinated coffee over-consumption," that an ADHD diagnosis was ruled out, but it was "possible that some of [Plaintiff's] deficits are also based in Borderline Intellectual Functioning," and that the administration of the Wechsler Adult Intelligence Scale—Fourth Edition ("WAIS-IV") "might provide more definitive data" and "for differential diagnosis." (Tr. 276-77.)

PAGE 3 – OPINION AND ORDER

On August 7, 2013, Dr. Arthur Lewy ("Dr. Lewy"), a non-examining state agency psychologist, completed a psychiatric review technique assessment. (Tr. 63-64.) Based on a review of the medical record, Dr. Lewy concluded that Plaintiff's mental impairments failed to satisfy listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorder).

Also on August 7, 2013, Dr. Lewy completed a mental residual functional capacity assessment form, in which he rated Plaintiff's limitations in each of fifteen categories of mental ability. (Tr. 66-68.) Dr. Lewy rated Plaintiff to be "not significantly limited" in seven categories and "moderately limited" in eight categories. (Tr. 66-68.) Dr. Lewy added that Plaintiff "would benefit from vocational guidance," but she is capable of "understanding and carrying out simple tasks," "sustaining simple and routine 1/2 step tasks," and "sustaining routine changes in the workplace." (Tr. 66-68.)

On January 29, 2014, Dr. Joshua Boyd ("Dr. Boyd"), a non-examining state agency psychologist, completed a psychiatric review technique assessment, agreeing with Dr. Lewy's finding that Plaintiff's mental impairments fail to satisfy listings 12.02, 12.04, and 12.06. (Tr. 79-80.) That same day, January 29, 2014, Dr. Boyd completed a mental residual functional capacity assessment, in which he agreed with Dr. Lewy's findings in all relevant respects. (Tr. 82-84.)

In late January and early February 2014, Plaintiff participated in counseling sessions with Ed Rosanksi ("Rosanksi"), a psychiatric mental health nurse practitioner at Western Psychological and Counseling services. Rosanski noted that Plaintiff had been diagnosed with

depression and ADHD, and he assigned Plaintiff GAF scores of seventy-six and seventy-eight.[3] (Tr. 505-06.)

In a progress note dated September 9, 2014, Rosanki noted that Plaintiff's ability to concentrate was improving on Wellbutrin and Adderall, Plaintiff's thought process was goal directed, Plaintiff's thought content was normal, Plaintiff's insight was good, and Plaintiff's judgment was appropriate. (Tr. 499.) Rosanki also assigned Plaintiff a current GAF score of seventy.

On November 3, 2015, Plaintiff was referred to Dr. Jane Starbird ("Dr. Starbird") for an intellectual evaluation. (Tr. 640-45.) Dr. Starbird administered the WAIS-IV, and Plaintiff received a full scale IQ score of sixty-nine, a verbal comprehension index score of seventy-two, a perceptual reasoning index score of seventy-three, a working memory index score of eighty, and a processing speed index score of seventy-one. Dr. Starbird observed that Plaintiff's "effort during testing was thought to be good," that Plaintiff "was thought to be credible in describing anxiety but would not meet the criteria for panic disorder," that "at times [Plaintiff's] perceptions of her medical problems were inaccurate or over-stated," that Plaintiff's symptoms did "not suggest that she would meet the criteria for major depressive disorder," that Plaintiff "did not describe symptoms" of PTSD, that "[n]o learning disability is assigned," and that Plaintiff's self-reported "performance in day to day tasks and household chores is thought to be commensurate with borderline range of intellectual function." (Tr. 643-45.) Dr. Starbird also assigned Plaintiff the following diagnoses: generalized anxiety disorder, rule out a somatization disorder, alcohol

---

[3] A GAF score of seventy-one to eighty "indicates 'transient' symptoms and 'expectable reactions to psychosocial stressors,' and 'no more than slight impairment in social, occupational, or school functioning.'" *Czarnecki v. Colvin*, 595 F. App'x 635, 638 n.2 (7th Cir. 2015) (citation omitted).

PAGE 5 – OPINION AND ORDER

dependence, and attention deficit disorder that is "well-managed with medications" (Axis I); borderline intellectual function (Axis II); and multiple medical concerns (Axis III). (Tr. 645.)

On November 11, 2015, Dr. Starbird completed a medical source statement, in which she rated Plaintiff's limitations in each of ten categories of work-related activities. (Tr. 646-48.) Dr. Starbird rated Plaintiff to be extremely impaired (i.e., no useful ability to function in this area) in her ability to make judgments on complex work-related decisions, and markedly impaired (i.e., substantial loss in the ability to function effectively) in her ability to carry out complex instructions and to respond appropriately to usual work situations and to changes in a routine work setting. Dr. Starbird also rated Plaintiff to be moderately impaired (i.e., more than slight limitations, but the individual is still able to function satisfactorily) in her ability to understand and remember complex instructions, mildly impaired (i.e., a slight limitation but the individual can generally function well) in her ability to make judgments on simple work-related decisions, interact appropriately with supervisors, and interact appropriately with co-workers, and "[a]bsent or minimal limitations" (i.e., if the individual's limitations are present, they are transient and/or expected reactions to psychological stresses) in her ability to understand and remember simple instructions, carry out simple instructions, and interact appropriately with the general public. (Tr. 646-48.)

In a written decision issued on March 25, 2016, the ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 416.920(a)(4), and found that Plaintiff was not disabled. *See infra*. The Social Security Administration Appeals Council denied Plaintiff's petition for review, making the ALJ's decision the Commissioner's final decision. Plaintiff timely appealed to federal district court.

# THE FIVE-STEP SEQUENTIAL ANALYSIS

## I. LEGAL STANDARD

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## II. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 10-22.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 27, 2013, the day she filed her protective application. (Tr. 12.) At step two, the ALJ determined that Plaintiff had the following severe impairments: "[B]orderline intellectual functioning; generalized anxiety disorder with post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); fibromyalgia; headaches; bilateral trochanteric bursitis; and bilateral carpal tunnel syndrome." (Tr. 12.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 13.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work that involves: (1) alternating "between sitting and standing, defined as sitting for an hour, standing for five to ten minutes, then returning to a seated position or reversed, all of which can be done without leaving the workstation," (2) occasionally balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs, and reaching overhead bilaterally, (3) frequently fingering and handling bilaterally, (4) never engaging in teamwork or climbing ladders, ropes, or scaffolds, (5) avoiding exposure to excessive vibration and hazards, (6) understanding, remembering, and carrying out tasks or instructions that are consistent with a Specific Vocational Preparation ("SVP") rating of one or two, (7) only superficial, incidental interactions with the general public (i.e., brief greetings or conversations), and (8) working in "proximity to co-workers." (Tr. 16.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a companion/housecleaner assistant. (Tr. 21.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that Plaintiff could perform, including work as housekeeper/cleaner and office helper. (Tr. 21-22.)

PAGE 8 – OPINION AND ORDER

# ANALYSIS

## I. STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* If the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the district court may not substitute its judgment for the judgment of the ALJ. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## II. DISCUSSION

Plaintiff argues that the ALJ erred in concluding that she does not meet Listing 12.05C, the listing for intellectual disability. (Pl.'s Opening Br. at 4.) "A claimant satisfies Listing 12.05C, demonstrating 'intellectual disability' and ending the five-step inquiry," if she can show: (1) "a valid IQ score of 60 to 70," (2) "a physical or other mental impairment imposing an additional and significant work-related limitation," and (3) "subaverage intellectual functioning

with deficits in adaptive functioning initially manifested before age 22."[4] *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (citation omitted). The Court will address each of these elements in turn.

A.  **Valid IQ Score**

In her decision, the ALJ concluded that Plaintiff "does not have a valid verbal, performance, or full scale IQ score of 60 through 70[.]" (Tr. 16.) The Commissioner, however, "does not now contest the validity" of Plaintiff's IQ score. (Def.'s Br. at 3; *see also* Pl.'s Reply at 1, explaining that the Commissioner "has conceded that the ALJ erred in rejecting the validity of the IQ scores," Tr. 644, indicating that Plaintiff received a full scale IQ score of sixty-nine on the WAIS-IV). Accordingly, the Court concludes that Plaintiff has established a valid IQ score of sixty to seventy. *See MacDonald v. Berryhill*, No. 16-cv-01046, 2017 WL 4154968, at *3 (E.D. Cal. Sept. 19, 2017) ("The Commissioner does not dispute that plaintiff has a valid IQ score falling within the range required by Listing 12.05C, nor does she dispute that plaintiff has additional impairments that impose an additional and significant work-related limitation. . . . Thus, the only issue is whether the onset of plaintiff's diminished intellectual function was prior to attaining age 22.").

B.  **Physical or Other Mental Impairment**

At step two of the sequential evaluation process, the ALJ found that Plaintiff suffers from several severe mental and physical impairments. (Tr. 12.) It is well settled that an ALJ's step-two severity finding satisfies Listing 12.05C's requirement of a physical or other mental impairment

---

[4] Listing 12.05 was amended effective January 17, 2017. *Saari v. Berryhill*, No. 16-567-BR, 2017 WL 1658826, at *3 n.3 (D. Or. Apr. 28, 2017) (citation omitted). Federal courts have been instructed to "apply Listing 12.05C as it read on the date of the ALJ's decision." *Rudolph v. Comm'r Soc. Sec. Admin.*, 709 F. App'x 930, 932 (11th Cir. 2017) (citation omitted). The foregoing elements reflect the version of Listing 12.05C in place on March 25, 2016, the day the ALJ issued her decision.

imposing an additional and significant work-related limitation. *See Narron v. Colvin*, No. 14-00923–SI, 2015 WL 4663388, at *4 (D. Or. Aug. 5, 2015) (collecting cases and holding that "[t]he ALJ's finding at step two [that the claimant] had severe impairments . . . satisfies Listing 12.05C's requirement of an impairment imposing an additional work-related limitation") (citations omitted). Accordingly, the Court concludes that Plaintiff has satisfied the second element.

      C.      **Deficits in Adaptive Functioning**

The third element requires Plaintiff to demonstrate "subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22." *Kennedy*, 738 F.3d at 1174. Plaintiff's valid full scale IQ score of sixty-nine is competent evidence establishing "subaverage intellectual functioning" before age twenty-two (i.e., the developmental period). *See Brooks v. Astrue*, No. 3:11-cv-01252-SI, 2012 WL 4739533, at *7 (D. Or. Oct. 3, 2012) (citation omitted). The remaining issue is whether the ALJ erred in concluding that Plaintiff failed to establish that her deficits in adaptive functioning "initially manifested" before age twenty-two. (*See* Def.'s Br. at 4, disputing only whether Plaintiff has established deficits in adaptive functioning).

Although the Ninth Circuit has not addressed the issue, judges in this district have interpreted Listing 12.05 to require a showing of deficits in adaptive functioning before age twenty-two, as well as current deficits in adaptive functioning. *See McGrew v. Colvin*, No. 3:13-cv-01909-SI, 2015 WL 1393291, at *6 (D. Or. Mar. 25, 2015) ("That a condition 'initially' manifests before age 22 implies that the condition remains ongoing. Thus, this Court interprets the introductory paragraph of Listing 12.05 to require a claimant to demonstrate current deficits in adaptive functioning in addition to demonstrating that those deficits initially manifested before age 22."); *see also Josh v. Berryhill*, No. 6:16-cv-1798-SI, 2017 WL 4330780, at *5 (D. Or.

PAGE 11 – OPINION AND ORDER

Sept. 29, 2017) (noting that the Ninth Circuit has not addressed the issue and continuing to follow the *McGrew* decision); *Holly v. Colvin*, No. 6:15-cv-02266-MC, 2017 WL 1197816, at *3 (D. Or. Mar. 30, 2017) (citing *McGrew*, noting that "Listing 12.05 requires that the *onset* of adaptive functioning deficits occur before age 22, but the paragraph does not specifically confine the analysis only to the time period before age 22," and therefore stating that "a claimant must demonstrate *current* deficits in adaptive functioning initially manifested before age 22") (emphasis added). The Court agrees with the interpretation of Listing 12.05 articulated in those decisions. Therefore, Plaintiff must demonstrate that she currently has deficits in adaptive functioning and that those deficits manifested before age twenty-two.

"Deficits in adaptive functioning refer to a 'failure to meet developmental and sociocultural standards for personal independence and social responsibility.'" *McGrew*, 2015 WL 1393291, at *7 n.2 (citation omitted). Such deficits "limit functioning in at least one activity of daily life, including communication and social participation in school, work, or other environments." *Id.* "Listing 12.05C does not require 'significant' deficits in adaptive functioning, but merely the existence of deficits." *Josh*, 2017 WL 4330780, at *6 n.3. "'[A] claimant may use circumstantial evidence to demonstrate adaptive functioning deficits, such as attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." *Brooks*, 2012 WL 4739533, at *7 (citation omitted); *see also Hernandez v. Astrue*, 380 F. App'x 699, 700-01 (9th Cir. 2010) ("There is evidence from which an ALJ could conclude that Plaintiff met the requirements of Listing 12.05. For example, she repeated fourth grade, received poor grades in school, and did not attend high school.").

Here, the ALJ held that there is "no evidence" indicating that Plaintiff "had significant deficits in adaptive functioning that manifested during the developmental period." (Tr. 15.) In support of her finding, the ALJ noted that: (1) although Plaintiff reported that she participated in special education classes, her limited school records "do not establish" that fact, and (2) Plaintiff's test scores indicate that she "consistently scored in the average to low average range." (Tr. 15.)

Contrary to the ALJ's finding, the weight of the evidence establishes that Plaintiff currently has deficits in adaptive functioning and that those deficits manifested before age twenty-two. *See Josh*, 2017 WL 4330780, at *6 (reversing the ALJ's finding that the claimant "did not have the required deficits in adaptive functioning" and noting that "the weight of the evidence" established that the claimant had such deficits). As an initial matter, the ALJ's RFC determination demonstrates that Plaintiff has current deficits in adaptive functioning. Indeed, in formulating the RFC, the ALJ determined that Plaintiff is unable to perform tasks that "require teamwork," that Plaintiff should be limited to work that involves "few if any workplace changes," and that Plaintiff should be limited to "only superficial, incidental interaction with the general public." (Tr. 16.) These findings demonstrate current deficits in adaptive functioning. *See Josh*, 2017 WL 4330780, at *6 (holding that the ALJ's RFC determination, which indicated, *inter alia*, that the claimant was unable to perform tasks requiring teamwork, demonstrated that the claimant had current deficits in adaptive functioning); *Kling v. Colvin*, No. 3:15-cv-01643-KI, 2016 WL 4770035, at *2-4 (D. Or. Sept. 13, 2016) (holding that the claimant demonstrated deficits in adaptive functioning that initially manifested before age twenty-two, and noting, among other things, that the ALJ's RFC determination limited the claimant to few, if any, workplace changes, and to work that did not require him to perform tasks requiring teamwork);

*Jones v. Colvin*, 149 F. Supp. 3d 1251, 1260 (D. Or. 2016) (holding that the ALJ's RFC determination, which limited the claimant to only brief social interactions with co-workers and supervisors, demonstrated that the claimant had deficits in adaptive functioning that initially manifested during the developmental period).

The weight of the evidence also demonstrates that these deficits manifested during the developmental period. Indeed, there is no dispute that: (1) Plaintiff's condition is innate, as opposed to a condition resulting from a disease or accident in adulthood; (2) Plaintiff performed poorly in school and dropped out of school after the ninth grade (*see* Tr. 188, indicating that Plaintiff was present for 171 days during her freshmen year of high school and absent for six days, but that Plaintiff earned five Fs, two Ds, and two not passing grades, producing a grade-point average of 1.00; *cf.* Tr. 189, indicating that Plaintiff enrolled in high school on September 2, 1986, and did not return in September 1987, Tr. 274, stating that Plaintiff "became pregnant" between her freshmen and sophomore years of high school); (3) on six occasions between the fifth and eighth grade, Plaintiff scored in the low or very low range on math and language tests that could "be compared from test to test and from year to year" (Tr. 192); or (4) Plaintiff obtained a valid full scale IQ score of sixty-nine, which places her in the second percentile. (Tr. 644); *cf. Brooks*, 2012 WL 4739533, at *5 ("'A person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.'") (citation and brackets omitted). Accordingly, the Court concludes that the weight of the evidence establishes that Plaintiff's deficits in adaptive functioning manifested before the age of twenty-two. *See Holly*, 2017 WL 1197816, at *3 (noting that that the claimant's condition was innate, and that the claimant performed poorly in school and obtained bad grades); *Josh*, 2017 WL 4330780, at *6 (noting that the claimant obtained a full scale IQ of seventy-two, which placed

him at the third percentile, and that the claimant's transcript indicated that he had a grade-point average of 1.06); *McGrew*, 2015 WL 1393291, at *6 (noting that the claimant dropped out of school in approximately tenth grade); *Brooks*, 2012 WL 4739533, at *7 (noting that a claimant may rely on "difficulties in reading, writing *or* math") (emphasis added).

The Commissioner, like the ALJ, asserts that Plaintiff has failed to meet her burden of establishing deficits in adaptive functioning because her limited school records do not corroborate her testimony that she participated in special education classes. (Def.'s Br. at 6.) This lack of documentation does not outweigh the evidence described above, in light of the fact that: (1) the Social Security Administration ("SSA") recognized that it might not even be able to obtain Plaintiff's old school records (*see* Tr. 62, "Mike also wanted to know if we got [the claimant's] school records when she was in [high school] for spec[ial] ed[ucation]. No–this was too far back and schools would not have records that far back. We will try to obtain them."); (2) Plaintiff consistently reported that she participated in special education classes (*see* Tr. 249-50, indicating that Plaintiff appeared for a mental health assessment on March 1, 2013, roughly four weeks before she filed her protective application, and reported that she participated in special education classes "all through school," Tr. 173, indicating that Plaintiff informed the SSA on or about April 15, 2013, that she participated in special education, and that Plaintiff provided the dates that she participated in such classes and the names of her schools, Tr. 273, appearing for a psychological evaluation on August 2, 2013, and reporting participation in "special education classes throughout her school years," Tr. 631, reporting on October 31, 2015, that Plaintiff has a ninth "grade special education," Tr. 640, reporting on November 3, 2015, that Plaintiff "had [an] IEP all throughout her schooling" and that Plaintiff "did not do well in school" because she "found it difficult to learn in all subjects"; *see also* Tr. 511, indicating that Plaintiff reported on

PAGE 15 – OPINION AND ORDER

May 8, 2015, that her "symptoms started when she was in grade school with having difficulty with paying close attention to details and not being able to stay focused on tasks or complete tasks," that she "had difficulty in high school and ended up dropping out her freshman year," and that she "was unable to finish high school or keep a job for any significant amount of time"); and (3) the ALJ never questioned Plaintiff's credibility regarding her reported participation in special education. (*See* Tr. 17, "I do not find all of the claimant's *symptom* allegations to be credible.") (emphasis added); *cf. Shaw v. Colvin*, 2016 WL 4083073, at *4-5 & n.4 (W.D. Wash. July 11, 2016) (noting that "[t]he ALJ did find that Plaintiff made inconsistent statements about his special education history," but observing that "courts have found 'circumstantial evidence' such as a claimant's self-reports sufficient to establish the existence of deficits during the developmental period, even where the ALJ has discounted a claimant's credibility" (citing, *inter alia*, *Jones*, 149 F. Supp. 3d at 1257-61))).

For all of these reasons, the Court finds that the ALJ erred by not finding Plaintiff disabled at step three. The Court reverses the Commissioner's decision and remands for an award of benefits because the record is clear that Plaintiff meets Listing 12.05C. Further proceedings would serve no useful purpose. *See Josh*, 2017 WL 4330780, at *8 ("Because the record is clear that Plaintiff meets Listing 12.05C, there is no utility in further proceedings. Accordingly, the Court reverses the Commissioner's decision and remands for an immediate award of benefits."); *see also Holohan*, 246 F.3d at 1210 ("The decision whether to remand for further proceedings or for an award of benefits is within [the court's] discretion.") (citation omitted).

///

///

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for an award of benefits.

**IT IS SO ORDERED.**

DATED this 9th day of April, 2018.

*Stacie F. Beckerman*

STACIE F. BECKERMAN
United States Magistrate Judge